## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARK A. PAYLOR                              )
                                           )
        Plaintiff,              )
                                           )
v.                                         )
                                           )
DONALD C. WINTER                           )          C.A. No. 08-00331 (CKK)
Secretary of the Navy                      )
                                           )
                                           )
        Defendant.              )

## PLAINTIFF'S PARTIAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff partially opposes Defendant's Motion to Dismiss. Plaintiff acknowledges that Defendant's argument that counts one and two of Plaintiff's Complaint (the APA claims) should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(1) appears correct. Plaintiff opposes the remainder of Defendant's Motion to Dismiss. In support of his opposition, Plaintiff submits the attached memorandum of points and authorities and Plaintiff Exhibits 1 and 2.

Respectfully submitted,

/s_____
Richard A. Bednar
Law Office of Richard A. Bednar
12107 Park Shore Ct.
Woodbridge, VA  22192-2217
703-490-0000 (Office)
703-991-0454 (Fax)
Email: Rbednar@ArmedForcesLaw.com

/s_____
Raymond J. Toney (NY0066)
The Law Office of Raymond J. Toney
404 Park Avenue South
14th Floor New York, NY 10016-8403
212-686-3434 Ext. 206 (Office)
718-504-4735 (Fax)
Email: rjtoney@rjtlaw.net

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARK A. PAYLOR                              )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )
                                           )          C.A. No. 08-00331 (CKK)
DONALD C. WINTER                           )
Secretary of the Navy                      )
                                           )
                Defendant.                 )


## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN PARTIAL OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff seeks review of the November 14, 2007, decision of the Board for Correction of

Naval Records (BCNR), approved by the Assistant General Counsel (Manpower and Reserve

Affairs), each acting for the Secretary of the Navy denying Plaintiff's application to the BCNR

requesting that he be given a Special Selection Board (SSB). Plaintiff asserts that (1) because the

final agency decision relied upon prohibited ex parte communications and (2) failed to either

acknowledge or comment on Plaintiff's non-frivolous arguments presented to the BCNR, the

decision of the BCNR should be set aside.  Counts One and Two of Plaintiff's Complaint seek

relief pursuant to the Administrative Procedures Act, (APA) 5 U.S.C.§ 701, et. seq.  Counts

Three and Four of Plaintiff's Complaint seek relief pursuant to 10 U.S.C. § 628(g)(1)(A).

Defendant moves to dismiss Counts One and Two of Plaintiff's Complaint pursuant to

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Defendant asserts that Plaintiff

has an adequate and exclusive remedy for the failure to be granted a SSB pursuant to 10 U.S.C.

§ 628(g)(1).  Upon review of Defendant's argument, Plaintiff acknowledges that Defendant's

position that this Court lacks jurisdiction over Plaintiff's APA claims (Counts One and Two) appears correct.

Defendant also moves to dismiss Count's Three and Four of Plaintiff's complaint pursuant to 12(b)(6) asserting that Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff asserts that his Complaint, this memorandum, and Plaintiff Exhibits 1 and 2, demonstrate that he has stated a claim upon which relief can be granted and that the matter should, therefore, not be dismissed pursuant to Rule 12(b)(6).

## BACKGROUND

Plaintiff is a Caucasian male who served on active duty in the U.S. Navy from June 19, 1981, until his retirement effective October 1, 1998. Complaint ¶ 5. At the time of his retirement, Plaintiff held the rank of Lieutenant Commander. Complaint ¶ 6.

Plaintiff failed selection for promotion to the rank of Commander by the fiscal year (FY) 1997, 1998, and 1999 Line Commander Selection Boards. Complaint ¶ 7. Plaintiff's failure of selection for promotion to Commander was the sole reason that he requested retirement. Complaint ¶ 8. After his retirement, Plaintiff learned that instructions or precepts issued by the Secretary of the Navy and used in the FY 1997, 1998, and 1999 Line Commander Selection Boards directed the selection boards to consider race and gender when selecting officers for promotion to Commander. Complaint ¶ 9.

In an application to the BCNR dated January 25, 2007, accompanied by a supporting brief dated January 31, 2007, Plaintiff asserted that the precepts directing the consideration of race and gender were unconstitutional because minority and female lieutenant commanders were given special preference based solely on their race and gender. Plaintiff asserted that these instructions and procedures caused him not to be fairly considered for promotion in the FY 1997,

1998, and 1999 Line Commander Selection Boards. Plaintiff requested that the BCNR provide him a SSB for promotion to Commander for FY 1997 that did not include the precepts asserted to be unconstitutional. Plaintiff also requested that if he were not selected for promotion by the FY 1997 SSB that he receive a SSB for FY 1998 and, if necessary, a SSB for FY 1999 that also omitted the precepts asserted to be unconstitutional. Complaint ¶ 10.

In response to Plaintiff's application, the BCNR sought an advisory opinion from the Department of the Navy Office of the Judge Advocate General (OJAG). Complaint ¶ 11. In its advisory opinion dated April 27, 2007, the OJAG conceded that Plaintiff may have been disadvantaged by the precept language in each of the FY 1997, 1998, and 1999 Line Commander Selection Boards. The advisory opinion concluded, however, that relief was not warranted because Plaintiff's application was untimely filed. Complaint ¶ 12.

In concluding that Plaintiff's application was untimely filed, the OJAG advisory opinion relied upon (1) a three-year statute of limitations for requesting a SSB contained in Secretary of the Navy Instruction (SECNAVINST) 1420.1B that was promulgated on March 28, 2006, and (2) 10 U.S.C. § 1552 providing applications for correction of military records must be filed within three years after discovery of the error or injustice. The OJAG noted, however, that § 1552 specifically provides that the three-year time limit could be waived by the BCNR in the interest of justice. Complaint ¶ 13.

On 14 November 2007, the BCNR denied Plaintiff's application and his request for a SSB that would consider his promotion to Commander without the precepts giving preference to female and minority officers. Complaint ¶ 14. In a letter dated December 5, 2007, Plaintiff was notified of the decision of the BCNR and informed the Assistant General Counsel (Manpower and Reserve Affairs) had approved the decision. Complaint ¶ 15. In its decision, the BCNR

specifically found that it was in the interest of justice to waive the three-year time limit contained in § 1552 and review Plaintiff's application on the merits. Complaint ¶ 16. The BCNR concluded, however, that it did not consider it appropriate to waive the three-year statute of limitations contained in SECNAV 1420.1B. It stated that this was so "particularly in light of [a Navy Personnel Command (NPC) e-mail dated June 18, 2007]". Complaint ¶ 17.

Prior to the decision of the BCNR, Plaintiff was neither provided a copy nor given notice of the NPC e-mail dated June 18, 2007, upon which the BCNR expressly relied. Complaint ¶ 18. Prior to the Decision of the BCNR, Plaintiff was neither provided a copy nor given notice of the message dated June 9, 2003, purporting to amend the predecessor of SECNAVINST 1420.1B upon which the BCNR expressly relied. Complaint ¶ 19. The decision of the BCNR stated that it substantially concurred with the OJAG advisory opinion. However, neither the decision of the BCNR nor the OJAG advisory opinion contain any reference to or comment on Plaintiff's argument and citation of authority for the proposition that the newly created statute of limitation, first published on March 28, 2006, and contained in SECNAVINST 1420.1B, must allow a reasonable time for the commencement of suits based upon existing causes of action.

## STANDARD OF REVIEW

### A. Rule 12(b)(1) - Subject Matter Jurisdiction.

In ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court must construe a Plaintiff's complaint liberally, giving the plaintiff the benefit of all favorable inferences that can be drawn from the alleged facts. *See Barr v. Clinton*, 361 370 F.3d 1196, 1199 (D.C. Cir. 2004). "At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429

F.3d 1098, 1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on

a motion to dismiss, it remains plaintiff's burden to prove subject matter jurisdiction by a

preponderance of the evidence.  *Am. Farm Bureau v. Environmental Prot. Agency*, 121 F. Supp.

2d 84, 90 (D.D.C. 2000).  In resolving a motion to dismiss pursuant to Rule 12(b)(1), a court

may "consider the complaint supplemented by undisputed facts evidenced in the record, or the

complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations

omitted).

**B.  Rule 12(b)(6) - Failure To State A Claim Upon Which Relief Can Be Granted.**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint.

*Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In order to survive a Rule 12(b)(6)

motion to dismiss, a complaint must make sufficient factual allegations to suggest "plausible

grounds" for the suit.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  "[O]nce a

claim has been stated adequately, it may be supported by showing any set of facts consistent with

the allegations in the complaint." *Id*. at 1968. A court should not dismiss for failure to state a

claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in

support of his claim that would entitle him to relief.  *Warren v. District of Columbia*, 353 F.3d

36, 37 (D.C. Cir. 2004).  In resolving a Rule 12(b)(6) motion, the court must treat the complaint's

factual allegations, including mixed questions of law and fact, as true, drawing all reasonable

inferences in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir.

2003), cert. denied, 540 U.S. 1149 (2004). However, the court may reject "inferences drawn by

Plaintiffs if such inferences are unsupported by the facts set out in the complaint," or "legal

conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp*., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

## I.  Rule 12(b)(1) – This Court Appears to Lack Subject Matter Jurisdiction Over Plaintiff's APA Claims.

Plaintiff acknowledges that Defendant's argument that this Court lacks jurisdiction over his APA claims (counts One and Two) appears correct.  As noted in Defendant's argument, 10 U.S.C. § 628(g)(1) provides Plaintiff an adequate remedy to redress the errors committed by the BCNR in denying him the SSB's sought as a remedy for the unconstitutional precepts used in his promotion selection boards.

## II.  Rule 12(b)(6) – Plaintiff Has Stated A Claim Upon Which Relief Can Be Granted.

Plaintiff asserts that decision of the BCNR should be set aside because the proceedings considered ex parte communications in violation of 10 U.S.C. § 1556 and because the BCNR failed to acknowledge or address non-frivolous arguments presented to the BCNR.

### A.  Ex Parte Communications.

The BCNR is statutorily barred from considering ex parte communications in its deliberations on an application pending before it.  The relevant statute provides:

Ex parte communications prohibited

   (a) In General.--The Secretary of each military department shall ensure that an applicant seeking corrective action by [. . .]the Board for Correction of Naval Records, [. . .] is provided a copy of all correspondence and communications (including summaries of verbal communications) to or from the agency or board, or a member of the staff of the agency or board, with an entity or person outside the agency or board that pertain directly to the applicant's case or have a material effect on the applicant's case.

   (b) Exceptions.--Subsection (a) does not apply to the following:
      (1) Classified information.

(2) Information the release of which is otherwise prohibited by law or regulation.
(3) Any record previously provided to the applicant or known to be possessed by the applicant.
(4) Any correspondence that is purely administrative in nature.
(5) Any military record that is (or may be) provided to the applicant by the Secretary of the military department or other source.

10 U.S.C. § 1556.

In its decision, the BCNR referenced and specifically relied on two items that qualify as ex parte communications. Both of these ex parte communications pertained directly to and had a material effect on Plaintiff's case before the BCNR. Because these communications were ex parte in nature, Plaintiff was prejudiced by not being able to offer comment and argument addressing their proper consideration.

### 1. E-Mail Correspondence dated June 18, 2007.

In its decision, the BCNR referenced and specifically relied upon "a Navy Personnel Command e-mail [dated June 18, 2007] stating that they did have records for use in conducting SSB's for the promotion boards in question, but that they are all paper records, so conducting an SSB for any of those boards would be an entirely manual process." BCNR Decision at 4. This e-mail was referenced by the BCNR as enclosure (6) of its decision. It is undisputed that this item was not provided to Plaintiff prior to the BCNR announcing its decision.

In its decision, the BCNR stated:

Upon review and consideration of all the evidence of record, the Board finds that [Plaintiff's] request should be denied.

The Board substantially concurs with the advisory opinion from OJAG. *The Board does not consider waiving the three-year limitation appropriate[1], particularly in light of enclosure (6).*

---

[1]  The three-limitation referenced is the one purportedly imposed by ALNAV 050/030 (Jun. 9, 2003) and later incorporated into SECNAVINST1401B (Mar. 26, 2006). Earlier in its decision, the BCNR specifically concluded that it was in the interests of justice waive its three-year statute of limitations contained in 10 U.S.C. § 1552(b) and review the Plaintiff's application on the merits. BCNR Decision at 2.

In view of the above, the Board's recommendation is as follows:

(a) That [Plaintiff's] request be denied.

BCNR Decision at 4-5 (emphasis added).

Although the BCNR did not explain how or why the Navy Personnel Command e-mail dated June 18, 2007, influenced its decision not to waive the three-year limitation period, the BCNR's own language unequivocally demonstrates that the e-mail both pertained directly to and had a material effect on the outcome of Plaintiff's case.  As a result, consideration of the e-mail, without providing a copy to Plaintiff prior to the BCNR decision, violated 10 U.S.C. § 1556 and renders the decision of the BCNR arbitrary or capricious; a result of material error of fact or material administrative error; or otherwise contrary to law.  *See* 10 U.S.C. § 628(g)(1).

In his Motion to Dismiss, Defendant asserts that the e-mail should not qualify as an ex parte communication because it is purely administrative in nature and, therefore, qualifies as an exemption to the general prohibition pursuant to 10 U.S.C. § 1556(b).  Defendant's contention is misplaced.  The June 18, 2007 e-mail was generated in response to a BCNR inquiry about the availability of sample records for the purpose of conducting SSB's sought by Plaintiff.  In response to its inquiry, the BCNR received a reply stating that sample records were available, but they were paper records, and that conducting Plaintiff SSB's as requested "would be an entire[ly] manual process."   Plaintiff Exhibit 1.

Although Defendant is correct that the information conveyed in the e-mail correspondence is factual in nature, such an assertion should not be equated with the conclusion that this information was "purely administrative in nature."  This is not a case in which the BCNR sought to verify a docket number, the date Plaintiff's application was received, how long Plaintiff's application had been pending before the agency, or other "purely administrative"

details about his case.  Instead, the agency sought and received information relating to the

feasibility and difficulty involved in conducting the SSB's sought by Plaintiff.  Rather than being

"purely administrative," the e-mail correspondence sought and received information that, by the

BCNR's own language, was weighed as a significant factor in the BCNR's decision making

process.

Defendant argues:  "While the BCNR decision referenced the e-mail in its conclusion,

[. . .], the reference provides no basis to conclude that the BCNR relied on the information

contained in the e-mail in connection with the merits of Plaintiff's claim."  Defendant's Motion to

Dismiss at 17.  Defendant's assertion is directly at odds with the BCNR's own language.  The

BCNR stated:  "The Board does not consider waiving the three-year limitation appropriate,

particularly in light of enclosure (6)."  BCNR decision at 4.  The inescapable conclusion to be

drawn from this language is that the process of manually retrieving sample records to conduct

the SSB's requested by Plaintiff pertained directly to and had a material effect on the BCNR's

decision to not waive the three-year limitation period.  Plaintiff was entitled to know that the

BCNR was considering this information and be provided an opportunity to comment and argue

on the proper weight, if any, to be afforded this information.  Accordingly, this Court should

hold that the BCNR decision violated 10 U.S.C. § 1556 and that Plaintiff has stated a claim upon

which relief can be granted.

## 2.  ALNAV 05/03 (9 June 2003).

After receiving Plaintiff's application, the BCNR sought an OJAG advisory opinion.  The

advisory opinion concluded that Plaintiff may have been disadvantaged by the precept language

used in Plaintiff's promotion selection boards but recommended denying relief since Plaintiff's

application was not timely filed.  In concluding that Plaintiff's application was untimely filed, the

OJAG advisory opinion relied upon (1) a three-year statute of limitations for requesting a SSB contained in SECNAVINST 1420.1B that was promulgated on March 28, 2006, and (2) 10 U.S.C. § 1552 providing applications for correction of military records must be filed within three years after discovery of the error or injustice.

In its decision, the BCNR agreed that it was in the interests of justice to waive its own three-year statute of limitations contained in 10 U.S.C. § 1552(b) but concluded that it would not be appropriate to waive the three-year limitation for requesting an SSB contained in SECNAVINST 1420.1B (2006). In deciding not to waive the three-year limitation period, the BCNR suggested that "SECNAVINST 1401.B, predecessor of SECNAVINST 1420.1B as it relates to SSB's was amended by message of 9 June 2003 to include the three-year time limit for SSB applications." BCNR Decision at 3.

In his Motion to Dismiss, Defendant notes that the message of June 9, 2003 purporting to amend SECNAVINST 1401.B is an administrative ALNAV message issued on June 9, 2003. Although Defendant notes the ALNAV became publicly available at an unspecified time after it was issued, he glosses over the fact that an ALNAV (All Navy) message by its very nature is directed only to Navy units and the Marine Corps. *See* http://www.npc.navy.mil/ ReferenceLibrary/Messages/; *see also Bienven v. United States,* 280 F.2d 822, 823 (Ct. Cl. 1960) (ALNAV is a message to all persons in the Navy). Because Plaintiff retired from the Navy effective October 1, 1998, Defendant does not suggest that Plaintiff had knowledge of this ALNAV but instead asserts that the ALNAV should not be considered an ex parte communication for the same reason that statutes and regulations do not constitute ex parte communications. Defendant's analysis is conclusory and incomplete.

In *Olson v. United States*, 123 Ct. Cl. 141, 149 (Ct. Cl. 1952), the Court of Claims considered the impact of an ALNAV announcing the promotion of an officer that was later determined to be invalid.  In declining to grant the officer the difference in pay between the two ranks, the Court of Claims observed that the ALNAV at issue "was not a contract, nor was it a regulation having the force and effect of a statute."   This Court should likewise conclude that the ALLNAV at issue in this case should not be considered on a par with statutes and regulations.

Because ALNAV's are internal Navy communications issued by the Secretary of the Navy and distributed to all commands and units, there is no basis to conclude that a person who is not on active duty in the Navy or Marine Corps would have actual knowledge of the content of an ALNAV, or that a person should be charged with constructive knowledge of an ALNAV's contents.  Both undersigned counsel reviewed the website identified by Defendant where ALNAV messages are now available to the public.  Both counsel represent that they independently determined that the messages can be retrieved only by specifying the year the message was issued and then knowing the identifier or title for the particular message sought.  They cannot be retrieved by keywords or search terms.  Thus, in order for Plaintiff to have obtained the ALNAV message, he would have had to know of its existence and its identifier or title.  Plaintiff further notes that a lawyer with experience in military law matters exercising due diligence would not have known to search ALNAV messages for modifications to a Navy regulation.  Rather, even an experienced military lawyer would reasonably and appropriately rely on the pertinent Navy regulation as it stood at the time.

Plaintiff urges the Court to reject Defendant's suggestion that an ALNAV should be considered on par with statutes and regulations and to hold that the ALNAV at issue in this case constituted an ex parte communication directly pertinent to and material to Plaintiff's case.

Moreover, Plaintiff suggests that Defendant's argument that the ALNAV should be considered an exception to an ex parte communication as purely administrative correspondence pursuant to 10 U.S.C. § 1556(b)(4) should be rejected on its face. The BCNR's analysis of Plaintiff's case relied upon substantive legal rights purportedly affected by this ALNAV. Accordingly the ALNAV does not fit within the exception of 10 U.S.C. § 1556(b)(4) because it is not correspondence "purely administrative in nature." As a result, this Court should conclude that Plaintiff has stated a claim upon which relief can be granted.

**B. The BCNR Failed to Acknowledge or Address Non-Frivolous Arguments Submitted by Plaintiff.**

A military board's decision, like the BCNR, which fails "to respond to arguments raised by a Plaintiff, which do not appear frivolous on their face and which could affect the Board's ultimate disposition, is arbitrary." *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 55 (D.D.C. 2005) (citing *Frizelle v. Slater*, 111 F.3d 172, 177 (D.C. Cir. 1997) (other citation omitted)). Thus, to survive judicial review, a military board's decision must convey that it "examined the relevant data and articulated a satisfactory explanation for its action." *Id.* at 54 (quoting *Puerto Rico Higher Educ. Assistance Corp. v. Riley*, 10 F.3d 847, 850 (D.C. Cir. 1993)).

In his application to the BCNR Plaintiff argued:

n. **Department of Navy Regulation Imposing Limitation on Timeliness of SSB Request.** The Department of the Navy regulation states:

All applications for special selection boards must be received no later than three years after the date the contested board results were made public. Applications received more than three years after the date the contested board results were made public will be treated as untimely and will be denied by the Chief of Naval Operations (CNO) or the Commandant of the Marine Corps (CMC), as appropriate. This authority may be delegated.

Paragraph 5f, SECNAVINST 1420.1B. This administrative statute of limitations is new, published on March 28, 2006. This limitation is not contained in the previous Department of Navy special selection board regulation,

SECNAVINST 1401.1B, which was canceled on the same date. Beginning with the constitutional principle that newly created statutes of limitations "must 'allow a reasonable time after they take effect for the commencement of suits upon existing causes of action.'" *Mickens v. United States,* 148 F.3d 145, 147-148 (2d Cir. 1998), quoting *Block v. North Dakota ex rel. Board of University and School Lands*, 461 U.S. 273, 286 n.23, 75 L. Ed. 2d 840, 103 S. Ct. 1811 (1983) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21, 70 L. Ed. 2d 738, 102 S. Ct. 781 (1982) (quoting *Wilson v. Iseminger*, 185 U.S. 55, 62, 46 L. Ed. 804, 22 S. Ct. 573 (1902))); see, *e.g.*, *United States v. Morena*, 245 U.S. 392, 397, 62 L. Ed. 359, 38 S. Ct. 151 (1918); *Terry v. Anderson*, 95 U.S. 628, 632-33, 24 L. Ed. 365 (1877) ("statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect"). Prior to March 28, 2006, when this limitation was published, LCDR Paylor was entitled to request a SSB at any time after the defective promotion selection board. After that date, LCDR Paylor must now be given a reasonable period of time to commence an action before the bar takes effect. Most courts have ruled that a reasonable period of time is the limitation period created by the bar, in this case, three years. A related principle is that "[c]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Kuzma v. Principi*, 341 F.3d 1327, 1328 (Fed. Cir. 2003), quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988)). Since neither the language of the statute governing SSBs nor the implementing regulations requires retroactive implementation of a limitations period, LCDR Paylor must be given a reasonable period of time to request a SSB.

Plaintiff's BCNR Application at 7-8; (attached as Plaintiff Exhibit 2).

In response to Plaintiff's arguments the OJAG, after reviewing the three-year time limit for requesting an SSB as provided in SECNAVINST 14201.B, limited its comments to the following:

[T]he Navy cannot, and should not, grant SSB[']s in perpetuity.[20] Petitioner's request comes 10 years after he initially failed selection for promotion. The time limit in effect when he filed his BNCR petition was, and is, three years.

[20] Petitioner complains that SECNAVINST 1420.1B, which places a three-year time limit on SSB requests, was not promulgated until 28 Mar 06, however, he is affected by the time limit because he delayed filing his SSB request.

OJAG Op. at 5.

In its decision the BCNR recounted items of evidence before the Board and summarized some of the arguments offered by Plaintiff.  In doing so the BCNR reviewed the OJAG advisory opinion and then suggested that "SECNAVINST 1401.B, predecessor SECNAVINST 1420.1B as it relates to SSB's, was amended by message dated of 9 June 2003 to include the three-year time limit for SSB applications."[2]  BCNR Decision at 3.   The only discussion and analysis, however, offered by the Board is the following:

> Upon review and consideration of all the evidence of record, the Board finds that [Plaintiff's] request should be denied.

> The Board substantially concurs with the advisory opinion from OJAG.  The Board does not consider waiving the three-year limitation appropriate, particularly in light of enclosure (6).

> In view of the above, the Board's recommendation is as follows:

> (a) That [Plaintiff's] request be denied.

BCNR Decision at 4-5.

Although counsel for Defendant attempts to suggest that the BCNR addressed Plaintiff's argument, a careful inspection of the OJAG advisory opinion and the decision of the BCNR demonstrates that neither acknowledged nor addressed Plaintiff's argument that he was entitled to a reasonable period of time in which to request a SSB after the newly enacted three-year time limit was imposed.  Although the OJAG clearly stated its opinion that a request for a SSB must be made within a three-year time limit, it provides absolutely no reference to the case law cited by Plaintiff and absolutely no comment or discussion addressing why a reasonable period of time for phasing in the time limitation was not appropriate.

---

[2]   To the extent that the BCNR's reference to the ALNAV may be interpreted as possibly addressing Plaintiff's argument, such a conclusion reinforces Plaintiff's argument that consideration of the ALNAV as an ex parte communication resulted in prejudice to Plaintiff.

Review of Defendant's Motion to Dismiss reveals that much of the explanation to support the action of the BCNR comes from Defendant's counsel's own post hoc rationalizations.  This Court, however, should reject the analysis offered by counsel and limit its review to the actual decision of the BCNR.  It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *American Textile Mfrs. Institute, Inc. v. Donovan*, 452 U.S. 490, 539 (1981).

Because the BCNR failed to respond to arguments raised by Plaintiff, which do not appear frivolous on their face and which could affect the Board's ultimate disposition, this Court should conclude that Plaintiff has stated a cause of action upon which relief can be granted.

### CONCLUSION

Plaintiff acknowledges that Defendant's argument that this Court lacks jurisdiction over Plaintiff's APA claims (Counts One and Two) appears correct.

Because, however, the BCNR relied upon ex parte communications in violation of 10 U.S.C. § 1556 and failed to address Plaintiff's non-frivolous arguments, Plaintiff has stated a claim upon which relief can be granted. Accordingly, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.

Respectfully submitted,

/s_____
Richard A. Bednar
Law Office of Richard A. Bednar
12107 Park Shore Ct.
Woodbridge, VA  22192-2217
703-490-0000 (Office)
703-991-0454 (Fax)
E-mail: Rbednar@ArmedForcesLaw.com

/s_____
Raymond J. Toney (NY0066)
The Law Office of Raymond J. Toney
404 Park Avenue South
14th Floor New York, NY 10016-8403
212-686-3434 Ext. 206 (Office)
718-504-4735 (Fax)
E-mail: rjtoney@rjtlaw.net

**Ruskin, Jonathan S CIV BCNR**

| | |
|---|---|
| **From:** | Lanham, David Brian CIV |
| **Sent:** | Monday, June 18, 2007 4:04 PM |
| **To:** | Ruskin, Jonathan S CIV BCNR |
| **Subject:** | RE: Availability ofsample records for SSB's for FY 97, 98 and 99 Active CDR Sel Bds |

Jon
We do have them, however, they are all paper records.  To conduct a SSB on one of those
years would be an entire manual process.

-----Original Message-----
From: Ruskin, Jonathan S CIV BCNR
Sent: Monday, June 18, 2007 14:02
To: Lanham, David Brian CIV
Subject: Availability ofsample records for SSB's for FY 97, 98 and 99 Active CDR Sel Bds

David:  Some time ago I asked whether NPC had sample records needed to conduct SSB's for
the FY 97, 98 and 99 Active CDR Sel Bds (we have a pending case where the applicant is
requesting that relief).  The last time I followed up, I was told you were still working
on it.  Anything new?  Jon

Plaitiff Exhibit 1
Page 1

Grant Lattin
Lattin & Bednar, LLP
11970 Shorewood Court
Woodbridge, VA 22192
Telephone: (703) 490-0000
Fax: (703) 991-0454

Counsel for Applicant

## BOARD FOR CORRECTION OF NAVAL RECORDS

|  |  |  |
|---|---|---|
| **LCDR Mark A. Paylor USN (Ret.)** | ) | |
| | ) | |
| Applicant, | ) | **BRIEF IN SUPPORT** |
| | ) | |
| to the | ) | **OF APPLICATION** |
| | ) | |
| **SECRETARY OF THE NAVY** | ) | **January 31, 2007** |
| | ) | |
| _____ | ) | |

### JURISDICTION

1.      Lieutenant Commander Mark A. Paylor, U.S. Navy, Retired (hereinafter referred to as

LCDR Paylor) submits this application for correction of his military records to the Board for

Correction of Naval Records (BCNR). The BCNR has jurisdiction to provide this relief pursuant

to the authority contained in section 1552 of title 10, United States Code; and title 32, part 723,

Code of Federal Regulations, published within the Department of the Navy as Secretary of the

Navy Instruction 5420.193.

### SUMMARY OF THE CASE

2.      LCDR Paylor alleges that he, as a white male, was the victim of racial and gender

discrimination. This type of case is commonly called a reverse discrimination case. He contends

that the procedures used by the promotion board that first considered him for selection in the

primary zone to commander were unconstitutional, and that this unconstitutional procedure

caused him not to be fairly considered for promotion. He not only failed to be considered fairly

when he was in-zone, but this same issue was present both times he was considered for

promotion to commander above-zone.

## ISSUE OF INJUSTICE OR ERROR

3.    **Issue.**   The procedural use of gender and racial classifications by the Secretary of the

Navy within the Fiscal Year 1997 (FY-97), FY-98, and FY-99 in-the-line, active duty,

commander promotion boards violated LCDR Paylor's Fifth Amendment rights under the U.S.

Constitution, and these procedures prevented each board from fairly considering LCDR Paylor's

promotion to commander.   These procedures were contrary to law and therefore constitute an

error and an injustice warranting a special selection board (SSB) for each board that unlawfully

considered him for promotion.

### THE FACTS AND LAW SUPPORTING THIS ISSUE

4.    **The Facts Supporting the Issue.**

a.    LCDR Paylor was white (Caucasian) male who began serving on active duty in

the United States Navy on June 19, 1981, and who retired from active duty effective October 1,

1998.   The sole reason he submitted his retirement was because he repeatedly failed selection for

promotion to commander.   Appendix to this Brief (hereinafter referred to as "App."), pgs. 1-3

b.    LCDR Paylor was in the primary promotion zone before the FY-97 active duty

line commander selection board.   He was considered by the next two promotion boards, FY-98

and FY-99, as an officer who was above-zone, and he was not selected for promotion by any of

these boards.   App., pgs. 3-71.

c.    The Secretary of the Navy issued instructions (called precepts) to the President of

the FY-97 commander selection boards containing, among other paragraphs, the following equal

opportunity (EO) language:

> The charter of these boards is to select those officers who are "best and fully
> qualified."   Within this charter, the Navy's goal is to achieve a minority selection
> rate which is at least equal to the selection opportunity within the relevant grade
> and competitive category.   This goal is important because the Navy benefits by
> ensuring the talents of minority officers are not overlooked due to the officer's
> past assignments, precommissioning social background, or possibly biased fitness
> reports.   Prior to adjournment, the boards must review the extent to which the goal
> of equivalent selection rates has been met.

Emphasis added.   App., pg. 15.   Similar instructions were given to the Presidents of the FY-98

and FY-99 commander selection boards.   App., pgs. 43-44, 65-66.   It should be noted that these

2

precepts classified female and racial minority officers as "minority officers." These precepts instructed the boards to unconstitutionally give preference to minority officers by requiring the board members to achieve selection rates at least equal to the overall rate of selection and further ordered the board to review the extent to which the goal of equivalent selection rates was met. In short, lieutenant commanders who were minority officers were given special preference because of their race and gender. The board members were told to consider factors that may have put minority officers at a disadvantage during their careers. Officers who were not classified as minority officers may have also suffered from the same disadvantages, but no instructions were given to provide non-minority officers special consideration. See the federal cases cited in paragraph 5, below.

      d.      LCDR Paylor is not required to provide any statistical evidence proving discrimination in his case. Federal courts have only required the plaintiffs to prove that discriminatory racial language was used in the promotion board process. As the Court pointed out in the *Berkley* case: "The government, in fact, during oral argument, conceded that if the Instruction established a racial [or gender] classification on its face, no further evidence or inquiry would be required as to how it may have been interpreted or applied in order to trigger strict scrutiny analysis." *Berkley v. United States*, 287 F.3d 1076, 1087 (Fed Cir. 2002). Once the strict scrutiny analysis is required, the burden shifts to the Navy to prove its racial and gender classification served a compelling government interest narrowly tailored to the achievement of that goal. If the Navy either fails or refuses to meet this burden, then the procedure is unconstitutional.

5.     **The Law Supporting this Issue.**

      a.      In 1997, the U.S. Court of Appeals for the Federal Circuit remanded a case back to a lower court because of its concerns about the constitutionality of EEO language used by an Air Force Selective Early Retirement Board. The Court was particularly concerned about how the board actually applied the EEO language during its proceedings. The Air Force EEO language was very similar to the Navy EEO language used at LCDR Paylor's boards. *Baker v. United States,* 127 F.3d 1081, 1084, 1997 U.S. App. LEXIS 28575 (Fed Cir 1997). Upon remand, the Air Force chose to settle this case rather than defend the constitutionality of its EEO language. *Baker v. United States,* 1998 U.S. Claims LEXIS 336.

3

b.    In 2000, The U.S. Court of Federal Claims held that similar EEO language used by the Army in a selective early retirement board was unconstitutional based upon racial and gender discrimination. *Christian v. United States,* 46 Fed. Cl. 793, 2000 U.S. Claims LEXIS 110 (2000).

c.    In a case filed in the U.S. District Court for the District of Columbia, a Marine Corps lieutenant colonel alleged that the instructions given by the Secretary of the Navy to a promotion selection board contained EEO instructions that were unconstitutional. *Marsh v. Danzig,* C.A. No. 00-2150 (D.D.C. filed on Sep. 7, 2000). Rather than defend the constitutionality of its EEO language, the Department of the Navy chose to give the officer a special selection board where he was subsequently promoted to colonel. This language was virtually identical to the language used at LCDR Paylor's board. The Secretary's action provided the relief requested in the complaint, so the complaint was dismissed prior to any judicial decision.

d.    A Navy Lieutenant also alleged unconstitutional EEO instructions to a promotion board. *Evers v. England,* C.A. No. 02-1517 (D.D.C., filed on Aug. 1, 2002). Once again, the Secretary of the Navy chose to give the officer a special selection board rather than defend the Navy's EO language. He was selected for promotion by the subsequent special selection board. And again, the case was dismissed prior to any judicial decision because the Secretary had provided the relief requested. **The EO language used at LT Evers' board is identical to the language used in LCDR Paylor's board**.

e.    The U.S. District Court for the District of Columbia held that similar EEO language used by the Army in a promotion selection board was unconstitutional based upon racial and gender discrimination. *Saunders v. White,* 191 F. Supp. 2d 95, 2002 U.S. Dist. LEXIS 3573 (D.D.C., Mar. 4, 2002). Not until March 4, 2002, had any federal court ruled that the procedures of a military promotion selection board were unconstitutional.

f.    On April 17, 2002, the U.S. Court of Appeals for the Federal Circuit overturned a ruling by a lower court in an Air Force case involving a reduction in force board that used the same racial and gender based discriminatory language in the secretarial instructions given to that board. The appeals court rejected the lower court's ruling that the EEO language was not

4

discriminatory, and sent the case back to the lower court to apply the proper standard. *Berkley v. United States*, 287 F.3d 1076 (Fed Cir. 2002).

      g.      Another Marine Corps lieutenant colonel filed a complaint in the U.S. District Court for the District of Columbia alleging that the identical EO language used in LtCol Harris's boards was unconstitutional. *Morey v. England,* C.A. No. 03-0070 (D.D.C. filed on Jan. 16, 2003). Like the previous case, the Secretary chose to give this officer a special selection board where he too was promoted to colonel, and this case was dismissed without any need for a judicial decision.

      h.      **Air Force Correction Board cases.** The Air Force Board for Correction of Military Records (AFBCMR) has decided in many cases that the use of racial and gender classifications by the Secretary of the Air Force demonstrated the existence of error or injustice and therefore warrant a special selection board. Just three examples of these types of cases are AFBCMR Docket No. 02-01608 decided on April 2, 2003; AFBMCR Docket No. 03-01438 decided on July 28, 2003; and AFBMCR Docket No. 05-00304 decided on June 16, 2005. The AFBCMR is now routinely processing cases involving previous discriminatory EO language, and the Secretary has given special instruction to SSBs to ensure these officers are given a fair promotion opportunity.

      i.      **Army Cases.** Initially, the Army was processing these cases through its Board for Correction of Military Records, but it now is simply asking officers affected by these unlawful boards to notify the Army Personnel Command to request a SSB for any promotion selection board containing pre-September 1999 EO promotion instructions. Army BCMR ltr of 20 Jun 2003 in the possession of applicant's counsel.

      j.      **Naval Correction Board Decisions.** In June, 2004, the Secretary of the Navy ordered a SSB in a case with facts virtually identical to those involving LCDR Paylor. In that case, the BCNR recommended that a SSB not be given to a Marine Corps lieutenant colonel based upon unconstitutional EO language. But the Secretary of the Navy reversed the BCNR's recommendation and approved a SSB solely on the basis of the unconstitutional EO language. App., pgs. 71-73. A recent appellate court decision stated: "It is axiomatic that 'an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" *Kreis v. Secretary of the Navy*, 406 F.3d 684, 687 (D.C. Cir. 2005), citing *Indep. Petroleum*

Plaitiff Exhibit 2
Page 5

*Ass'n of Am. v. Babbitt,* 92 F.3d 1248, 1258 (D.C. Cir. 1996). In the *Kreis* case the Court of
Appeals ruled that the decision of the AFBCMR was arbitrary and capricious in part because it
failed to follow that board's previous precedent. *Kreis* at 687.

      k.    **Special Selection Board Statute.** Section 628(b)(1)(A), Title 10, United States
Code permits the Secretary of the Navy to convene a special selection board when the action of
that board was "contrary to law." It has been shown above that the EO language used by the FY-
97 and FY-98 colonel selection boards were unconstitutional, and therefore those board
procedures were contrary to law.

      l.    **Special Selection Board Regulation—Reasonable Diligence.** The Department
of the Navy regulation states:

> A special selection board will not be convened to consider any officer who,
> through the exercise of reasonable diligence, might have discovered and corrected
> the error or omission in the official record prior to convening the promotion
> selection board that considered, but did not select the officer.

Paragraph 5e, SECNAVINST 1420.1B. In this case, neither LCDR Paylor nor any other officer
could have known that the Secretary's EO language to a selection board during this time period
was unconstitutional. As the BCNR so often states, there is a presumption of regularity for any
actions taken by military officials. LCDR Paylor had to presume that the Secretary's promotion
board procedures were regular and lawful on its face. Counsel has not been able to find a single
published decision where the Navy's EO language was determined to be unconstitutional or
otherwise contrary to law. The 2004 decision approving a SSB and overturning a BCNR
recommendation contains a legal memorandum written by the Assistant General Counsel
(Manpower and Reserve Affairs) confirming the fact that the EO language used in this case has
never been found unconstitutional in a court of law. It also confirms that the Navy changed its
EO language because it believed its EO language was unconstitutional. App., pgs. 81-82. This
legal memorandum is the first time known to counsel that the Department of the Navy has
conceded the unconstitutionality of its EO language. The Department of the Navy has been very
careful to avoid any litigation resulting in any published judicial decision that its EO language
was unconstitutional. As can be seen in the court decisions cited above, the Department of the
Navy has always provided a SSB and never allowed a single case to progress to a judge's
decision. For this reason, no officer, including LCDR Paylor, has ever been placed on notice,

Plaitiff Exhibit 2
Page 6

actual or constructive, that the Department of the Navy's EO language was unconstitutional. Neither the dismissal of numerous court complaints because the Secretary provides a SSB after the complaint is filed in federal court; nor a legal memorandum in another officer's request for a SSB, which is information protected from public disclosure by the Privacy Act; has put LCDR Paylor on notice that the Navy's EO language was unconstitutional. He has therefore acted with reasonable diligence. It should also be noted that the reasonable diligence argument focuses on actions an officer must take **prior** to the SSB convening. In short, this provision does not preclude LCDR Paylor from receiving a SSB.

      m.    **Special Selection Board Regulation—Waiver of BCNR Statute of Limitations is in the Interests of Justice.** The BCNR is permitted to waive its three year statute of limitations if it determines it is in the interests of justice to do so. 10 U.S.C. § 1552(b). For the reasons stated in the previous paragraph, LCDR Paylor could not have known that he was injured by the unconstitutional EO language. To this date, no Court has ruled that the Navy's EO language was unconstitutional. But for the fact that in early 2006, LCDR Paylor spoke with counsel who had been personally involved in unpublished cases, he would never have known about this issue. From the experience of applicant's counsel, it is observed that the BCNR waives its statute of limitations in virtually all cases. If the statute of limitations is not waived in this case, then please consider this paragraph a formal request from counsel for LCDR Paylor under the Freedom of Information Act to obtain all documents held by the BCNR pertaining to the waiver of the statute of limitations, including but not limited to, any emails or other correspondence or communications regarding the policy of the BCNR to waive its statute of limitations, and any data showing the number of times the BCNR has waived its statute of limitations in comparison to the total number of its cases and/or in comparison to the total number of cases that were filed beyond its statute of limitations. Counsel for LCDR Paylor is willing to pay any reasonable search and copying costs related to this request.

      n.    **Department of Navy Regulation Imposing Limitation on Timeliness of SSB Request.** The Department of the Navy regulation states:

> All applications for special selection boards must be received no later than three years after the date the contested board results were made public. Applications received more than three years after the date the contested board results were made public will be treated as untimely and will be denied by the Chief of Naval

7

Operations (CNO) or the Commandant of the Marine Corps (CMC), as
appropriate. This authority may be delegated.

Paragraph 5f, SECNAVINST 1420.1B. This administrative statute of limitations is new,
published on March 28, 2006. This limitation is not contained in the previous Department of
Navy special selection board regulation, SECNAVINST 1401.1B, which was canceled on the
same date. Beginning with the constitutional principle that newly created statutes of limitations
"must 'allow a reasonable time after they take effect for the commencement of suits upon existing
causes of action.'" *Mickens v. United States,* 148 F.3d 145, 147-148 (2d Cir. 1998), quoting *Block
v. North Dakota ex rel. Board of University and School Lands*, 461 U.S. 273, 286 n.23, 75 L. Ed.
2d 840, 103 S. Ct. 1811 (1983) (quoting *Texaco, Inc. v. Short*, 454 U.S. 516, 527 n.21, 70 L. Ed.
2d 738, 102 S. Ct. 781 (1982) (quoting *Wilson v. Iseminger*, 185 U.S. 55, 62, 46 L. Ed. 804, 22
S. Ct. 573 (1902))); see, *e.g.*, *United States v. Morena*, 245 U.S. 392, 397, 62 L. Ed. 359, 38 S.
Ct. 151 (1918); *Terry v. Anderson*, 95 U.S. 628, 632-33, 24 L. Ed. 365 (1877) ("statutes of
limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the
commencement of an action before the bar takes effect"). Prior to March 28, 2006, when this
limitation was published, LCDR Paylor was entitled to request a SSB at any time after the
defective promotion selection board. After that date, LCDR Paylor must now be given a
reasonable period of time to commence an action before the bar takes effect. Most courts have
ruled that a reasonable period of time is the limitation period created by the bar, in this case,
three years. A related principle is that "[c]ongressional enactments and administrative rules will
not be construed to have retroactive effect unless their language requires this result." *Kuzma v.
Principi*, 341 F.3d 1327, 1328 (Fed. Cir. 2003), quoting *Landgraf v. USI Film Prods.*, 511 U.S.
244, 272, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994) (quoting *Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204, 208, 102 L. Ed. 2d 493, 109 S. Ct. 468 (1988)). Since neither the language of the
statute governing SSBs nor the implementing regulations requires retroactive implementation of
a limitations period, LCDR Paylor must be given a reasonable period of time to request a SSB.

     o.    **BCNR Has Authority to Recommend SSB.**  The Secretary of the Navy has
specifically given the BCNR authority to recommend to the Secretary that a SSB be convened in
any case warranting a SSB. See paragraph 24n(2), SECNAVINST 1420.1B.

8

## ARGUMENT FOR RELIEF

6.      LCDR Paylor went before a promotion selection board whose members received instructions that violated the Fifth Amendment to the U.S. Constitution. This board was instructed to consider race and gender when selecting officers for promotion to commander. Consideration of race and gender to classify officers is unlawful except under very limited circumstances that were not present in this case. This is a classic reverse discrimination case. It is generally minorities who are the subject of discrimination. In this case, it was the non-minority officers who were the subject of racial and gender discrimination. Each time that federal courts have considered this matter, they have concluded that the military cannot use these discriminatory and unconstitutional procedures.

## REQUEST FOR RELIEF

7.      LCDR Paylor respectfully requests that he receive a special selection board (SSB) for promotion to commander by the FY-97 promotion board, and that the EEO language originally used at that board, cited at paragraph 4c above, not be utilized by this special selection board. Furthermore, LCDR Paylor asserts that those promotion boards that considered him for promotion above-zone suffered from the same unconstitutional procedures, and if he is not selected by the FY-97 in-zone board, that he subsequently be provided a special selection board for each of those above-zone boards.

Grant Lattin, Counsel for Applicant

# APPENDIX

**Document Description**                                                                    **Pages**

LCDR Paylor's DD-214 ……………………………………………………    1-2

LCDR Paylor's declaration of 31 Dec 2006 …………………………….......    3

Secretary of the Navy Precept for FY-97 commander promotion board ………….    4-18

FY-97 Naval Message re Officers in-zone for promotion to commander ………    19-30

Secretary of the Navy Precept for FY-98 commander promotion board ………….    31-47

FY-98 Naval Message re Officers in-zone for promotion to commander ………    48-50

Secretary of the Navy Precept for FY-99 commander promotion board ………….    51-69

FY-99 Naval Message re Officers in-zone for promotion to commander ………    70-71

Assistant General Counsel (M&RA) Memorandum ………………………………    72-73