### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

MARK A. PAYLOR,

     Plaintiff,

     v.

DONALD C. WINTER, Secretary of the Navy,

     Defendant.

Civil Action No. 08-331 (CKK)

### MEMORANDUM OPINION
(March 5, 2009)

On November 14, 2007, the Board for Correction of Naval Records ("BCNR") denied a request submitted by Plaintiff Mark A. Paylor, a retired Lieutenant Commander in the United States Navy, to convene a special selection board to consider whether he should have been recommended for a promotion in 1997, 1998, or 1999. The BCNR found–and Plaintiff does not dispute–that his request was untimely because it was submitted on January 25, 2007, despite a three-year time limit that applies to such requests. Plaintiff now brings suit against Defendant Donald C. Winter, in his official capacity as Secretary of the Navy, arguing that the BCNR erred by considering two ex parte communications prior to reaching its decision and by failing to address an argument Plaintiff raised in the brief accompanying his request. Defendant has filed a Motion to Dismiss Plaintiff's Complaint, which the parties have fully briefed. After thoroughly considering the parties' submissions, relevant case law, and applicable statutory and regulatory authority, the Court shall GRANT Defendant's Motion to Dismiss in its entirety, for the reasons that follow.

# I. BACKGROUND

*A.     Statutory and Regulatory Background*

The Secretary of the Navy ("the Secretary") is authorized to convene a promotion

selection board to recommend an officer for promotion.  10 U.S.C. § 611.  If the Secretary

determines that there was "material unfairness" with respect to a person who was considered for

a promotion but was not selected, the Secretary may also convene a special selection board

("SSB") to determine whether that person should be recommended for a promotion

retrospectively.  *Id.* § 628(b)(1).  The decision not to convene an SSB is subject to judicial

review.  *Id.* § 628(g).

The Secretary has prescribed regulations governing SSB procedures, as authorized by

statute.  *Id.* § 628(j).  Pursuant to those regulations, an officer may a request an SSB by filing an

application with the Chief of Naval Operations or the BCNR.  *See* Secretary of the Navy

Instruction (hereinafter "Instruction") 1420.1B(24)(c), (24)(n).  Applications submitted to the

BCNR must be referred to the Chief of Naval Operations for comments and recommendations,

and questions of law or mixed questions of law and fact must be referred to the Navy's Office of

Judge Advocate General ("OJAG").  *See* Instruction 1420.1B(24)(e)(2), (n)(2).  If the BCMR

concludes that an SSB is warranted after receiving these comments and recommendations, the

BCNR refers the case to the Secretary for a final determination.  *See* Instruction 1420.1B(e)(2).

During its deliberations, the BCNR is prohibited from making or receiving ex parte

communications:

> The Secretary of each military department shall ensure that an applicant seeking
> corrective action by . . . the [BCNR] . . . is provided a copy of all correspondence
> and communications (including summarizes of verbal communications) to or from

> the agency or board, or a member of the staff of the agency or board, with an
> entity or person outside the agency or board that pertain directly to the applicant's
> case or have a material effect on the applicant's case.

10 U.S.C. § 1556(a).  There are exceptions to this prohibition, however, including "[a]ny

correspondence that is purely administrative in nature."  *Id.* § 1556(b).

In terms of timing, officers cannot wait indefinitely to request an SSB.  In 2001, Congress

amended 10 U.S.C. § 628, authorizing the Secretary to "prescribe regulations to carry out th[at]

section," including "[a]ny time limits applicable to the filing of an application for [an SSB]."  10

U.S.C. § 628(j)(1)-(2), *as amended*.  The legislation specifically noted Congress' intent that the

amendments were to have both retroactive and prospective effect:

> the amendments . . . shall apply with respect to any proceeding pending on or after
> the date of the enactment of this Act without regard to whether a challenge to an
> action of a selection board of any of the Armed Forces being considered in the
> proceeding was initiated before, on, or after that date.

National Defense Authorization Act for FY 2002, Pub. L. No. 107-107, § 503, 115 Stat. 1012

(2001).

In compliance with Congress' authorization to impose time limits on SSB requests, the

Secretary amended Instruction 1401.1B on June 9, 2003, through an "Administrative Message"

that imposed a three-year time limit on SSB requests:

> All applications for [SSB's] must be received no later than three years after the
> date the contested board results were made public.  Applications received more
> than three years after the date the contested board results were made public will be
> treated as untimely and will be denied.

Def.'s Mot., Ex. D (6/9/03 Administrative Message).  This instruction was replaced on March 28,

2006, by current Instruction 1420.1B, which retained the three-year time limit:

> All applications for [SSB's] must be received no later than three years after the

date the contested board results were made public.  Applications received more than three years after the date the contested board results were made public will be treated as untimely and will be denied by the Chief Naval Officer . . . This authority may be delegated.

Instruction 1420.1B(5)(f).

Finally, if an SSB is convened, the Chief of Naval Operations must prepare a "sampling" of records for officers who were considered for promotion by the promotion selection board to allow an evaluation of the requesting officer's relative credentials.  *See* Instruction 1420.1B(24)(f), (i)(2).

B.    *Factual Background*

Plaintiff is a Caucasian male who served on active duty in the United States Navy beginning on June 19, 1981, until his retirement on October 1, 1998.[1]  Compl. ¶ 5.  Plaintiff retired with the rank of lieutenant commander after failing to obtain a promotion to commander in fiscal years ("FY") 1997, 1998, or 1999.  *Id.* ¶¶ 6-8.  After his retirement, Plaintiff "learned that instructions or precepts issued by the Secretary of the Navy and used in the FY 1997, 1998, and 1999 Line Commander Selection Boards directed the selection boards to consider race and gender when selecting officers for promotion to commander."  *Id.* ¶ 9.  Accordingly, Plaintiff filed an application and accompanying brief with the BCNR on January 25, 2007, asserting that these precepts were unconstitutional because "racial minority and female lieutenant commanders were given special preference based solely on race and gender."  *Id.* ¶ 10.  Plaintiff asked the BCNR to convene an SSB to consider him for promotion without these precepts.  *Id.*

---

[1] In discussing these facts, the Court accepts as true all well-pleaded factual allegations in Plaintiff's Complaint, as it must on a Motion to Dismiss.  *Scandinavian Satellite Sys. v. Prime TV Ltd.*, 291 F.3d 839, 844 (D.C. Cir. 2002).

In response to Plaintiff's request, the BCNR requested an Advisory Opinion from OJAG. *Id.* OJAG issued an Advisory Opinion on April 27, 2007, concluding that Plaintiff "may have been disadvantaged by the precept language," but declining to reach the merits of Plaintiff's argument because Plaintiff "submitted his request 10 years after the fact." *Id.* ¶ 12; Def.'s Mot., Ex. E at 1, 5 (4/27/07 OJAG Advisory Opinion).[2] Accordingly, OJAG recommended that Plaintiff's request be denied as "untimely." *Id.*

The BCNR denied Plaintiff's request for an SSB on November 14, 2007. *See* Def.'s Mot., Ex. F at 3-5 (11/14/07 BCNR Decision). The BCNR found that the three-year time limit embodied in Instruction 1420.1B and its predecessor Instruction 1401.B (as amended by the Secretary's Administrative Message dated June 9, 2003), dictated that Plaintiff's January 2007 request for an SSB be deemed untimely. *Id.* In addition to relying directly on OJAG's Advisory Opinion for support, *see* Def.'s Mot., Ex. F at 4 ("[the BCNR] substantially concurs with the advisory opinion from OJAG"), the BCNR also attached to its decision an email exchange, on which it relied to show that the process for compiling sample records for the FY 1997, 1998, and 1999 promotion boards would be time consuming. *See* Pl.'s Opp'n, Ex. 1 at 1 (6/18/07 Email Exchange). The email exchange contained the following information:

> David: Some time ago I asked whether NPC had sample records needed to conduct SSB's for the FY 97, 98, and 99 Active CDR Sel Bds (we have a pending case where the applicant is requesting that relief). The last time I followed up, I was told you were still working on it. Anything new? Jon.

---

[2] The Court may consider this Advisory Opinion and the other related BCMR documents referenced in the Complaint without converting Defendant's Motion to Dismiss into one for summary judgment. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

> Jon: We do have them, however, they are all paper records.  To conduct a[n] SSB
> on one of those years would be an entire[ly] manual process.

*Id.*  The BCNR concluded that it "[did] not consider waiving the three-year limitation

appropriate, particularly in light of [the email exchange quoted above]."  Def.'s Mot., Ex. F at 4

(11/14/07 BCNR Decision).[3]

Plaintiff filed a Complaint in this Court on February 25, 2008, asserting that the BCNR

acted unlawfully for three reasons.  First, the BCNR failed to provide Plaintiff with the email

exchange regarding the availability of sample records prior to issuing its decision, which Plaintiff

alleges to have been an improper ex parte communication.  Compl. ¶ 18.  Second, the BCNR

failed to provide Plaintiff with a copy of the Secretary's June 9, 2003 Administrative Message

that imposed the three-year time limit for SSB requests, which Plaintiff also alleges to have been

an improper ex parte communication.  *Id.* ¶ 19.  Third, according to Plaintiff, the BCNR did not

sufficiently address his argument that "the newly created statute of limitation, first published on

March 28, 2006 [ignoring that the three-year time limitation was first imposed on June 9, 2003]

. . . must allow a reasonable time for the commencement of suits based upon existing causes of

action."  Compl. ¶ 20.

Based on these alleged errors, Plaintiff's Complaint asserts four claims for relief:  Counts

I and II under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and Counts III and IV

under 10 U.S.C. § 628(g)(1) (judicial review of a decision not convene an SSB).  Defendant filed

---

[3] The BCNR did conclude that the three-year statute of limitations set forth in 10 U.S.C. §
1552, which applies to applications for correction of a military record, should be waived in the
interests of justice.  *See* Def.'s Mot., Ex. F at 2 (11/14/07 BCNR Decision).  This holding did not
entitle Plaintiff to relief, however, because the BCNR also determined, as set forth above, that
the three-year time limit set forth in Instruction 1420.1B for requesting an SSB should not be
waived.  *Id.* at 3-5.

a Motion to Dismiss, arguing that the Court lacked jurisdiction to consider Counts I and II arising

under the APA, and that Plaintiff failed to state a claim as to Counts III and IV.  *See* Def.'s Mot.

at 12-24.  Plaintiff filed a Partial Opposition, conceding that his claims under the APA should be

dismissed.  *See* Pl.'s Opp'n at 1-2 ("Plaintiff acknowledges that Defendant's position that this

Court lacks jurisdiction over Plaintiff's APA claims . . . appears correct").  Plaintiff *did* oppose

Defendant's Motion to Dismiss as to Counts III and IV arising under 10 U.S.C. § 628(g)(1), and

Defendant filed a Reply.

Based on the foregoing, the Court shall grant Defendant's Motion to Dismiss Counts I

and II as conceded and on the merits pursuant to Federal Rule of Civil Procedure 12(b)(1).[4]  As

for Counts III and IV, Defendant's Motion to Dismiss is fully briefed and ripe for decision.

## II.  LEGAL STANDARD

A.      *Motion to Dismiss*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain

statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to

state a claim, the court must construe the complaint in a light most favorable to the plaintiff and

must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.

---

[4] Counts I and II must be dismissed because 10 U.S.C. 628(h) imposes an express
jurisdictional limitation on challenges that are "based to any extent on the failure of a person to
be selected for promotion by a promotion board," and the APA does not provide a basis for
review when some "other adequate remedy" exists, 5 U.S.C. § 704.

*In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).  While the court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Moreover, the court is not bound to accept the legal conclusions of the non-moving party.  *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997).

The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record.  *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  *See also Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (affirming lower court's reliance on an administrative record when deciding a motion to dismiss, where the court used the record to resolve legal questions and not to test factual allegations in the complaint); *Koutny v. Martin*, 530 F. Supp. 2d 84, 89 (D.D.C. 2007) (explaining that a court may take notice of public documents, such as court records, when deciding a motion to dismiss).

      B.     *Denial of a Request for an SSB*

The applicable standard for review of the Secretary's decision to deny a request for an SSB is found in 10 U.S.C. § 628(g).  The Court may set aside the Secretary's decision only if the Court finds the decision to be:  (i) arbitrary or capricious; (ii) not based on substantial evidence; (iii) a result of material error of fact or material administrative error; or (iv) otherwise contrary to law.  10 U.S.C. § 628(g)(1)(A).  The Court applies this standard in an "'unusually deferential'" manner because it relates to the personnel decisions of the military.  *Miller v. Dep't of Navy*, 476

8

F.3d 936, 938 (D.C. Cir. 2007) (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)

(quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).

### III.  DISCUSSION

A.     *Count III: Ex Parte Communications*

Count III of Plaintiff's Complaint alleges that the November 14, 2007 decision of the

BCNR is (1) arbitrary and capricious, (2) not based on substantial evidence, (3) a result of

material error of fact or material administrative error, and (4) otherwise contrary to the law

because the BCNR considered two ex parte communications:  the June 18, 2007 email exchange

concerning the availability of sample records and the Secretary's June 9, 2003 Administrative

Message that amended Instruction 1401.1B.  Compl. ¶ 29.  The Court shall address each of these

communications, in turn.

1.     June 18, 2007 Email Exchange

As set forth above, SSB regulations require the Chief of Naval Operations to prepare a

"sampling" of records for officers who were considered for promotion by a promotion selection

board to allow an evaluation of the relative credentials of the officer requesting an SSB.  *See*

Instruction 1420.1B(24)(f), (i)(2).  In this case, the BCNR relied on an email exchange discussing

the availability of sample records for the FY 1997, 1998, and 1999 selection boards:

> David: Some time ago I asked whether NPC had sample records needed to
> conduct SSB's for the FY 97, 98, and 99 Active CDR Sel Bds (we have a pending
> case where the applicant is requesting that relief).  The last time I followed up, I
> was told you were still working on it.  Anything new?  Jon.
>
> Jon: We do have them, however, they are all paper records.  To conduct a[n] SSB
> on one of those years would be an entire[ly] manual process.

Pl.'s Opp'n, Ex. 1 at 1 (6/18/07 Email Exchange).  Based in part on this information, the BCNR

decided not to waive the three-year time limit applied to such requests:

> The [BCNR] substantially concurs with the advisory opinion from OJAG.  The
> [BCMR] does not consider waiving the three-year limitation appropriate,
> particularly in light of [the email exchange quoted above].

Def.'s Mot., Ex. F at 4 (11/14/07 BCMR Decision).

Defendant moves to dismiss Plaintiff's claim based on this email because, although it
constituted an ex parte communication, it was entirely "administrative in nature" and was
therefore not prohibited by statute.  *See* Def.'s Mot. at 17.  In response, Plaintiff argues that the
email exchange "had a material effect on the outcome of Plaintiff's case."  Pl.'s Opp'n at 8.
Although Plaintiff acknowledges that the information "is factual in nature," Plaintiff argues that
"[t]he inescapable conclusion to be drawn . . . is that the process of manually retrieving sample
records to conduct the SSB's requested by Plaintiff pertained directly to and had a material effect
on the BCNR's decision to not waive the three-year limitation period."  *Id.* at 8-9.  Based on
these arguments, Plaintiff concludes that he "was entitled to know that the BCNR was
considering the information" and he should have been allowed "to comment and argue on the
proper weight, if any, to be afforded this information."  *Id.* at 9.

Plaintiff's arguments are not persuasive.  As set forth above, ex parte communications
with the BCNR are not prohibited when the correspondence is "administrative in nature."  10
U.S.C. § 1556(b).  Although the statute does not define what constitutes an "administrative"
communication, the Court finds that this email exchange is encompassed within any reasonable
definition of that term.  The email exchange contained facts, not analysis (legal or otherwise).
While the BCNR apparently relied on these facts to support its decision not to waive the three-
year time period in light of the difficulties associated with compiling the sample records, that

conclusion was reached by the BCNR, and was *not* conveyed in the email exchange (*i.e.*, the email did not state that Plaintiff's request should be denied because it would require a time consuming search for paper records, but instead only set forth the facts from which the BCMR reached its own conclusions).  Moreover, the factual information contained in the email exchange is not subject to dispute between the parties.  Although Plaintiff argues that he wanted the opportunity to make a "comment" to the BCNR, he fails to proffer what his "comment" would have been, and he certainly does not contest the accuracy of the information itself.

Plaintiff's argument that the information is not administrative because it had a material effect on his case is misguided.  The relevant statute, 10 U.S.C. § 1556, applies *precisely* to communications that have a material effect on a person's case, but that may nevertheless be permissible because they are administrative in nature.  *Compare id.* § 1556(a) (prohibiting ex parte communications that "have a material effect on the applicant's case") *with id.* § 1556(b) (enumerating an exception to this prohibition where the communications are "purely administrative in nature").  Thus, if communications having a material effect could never be considered "administrative" as Plaintiff's argument suggests, then the administrative exception enumerated in the statute would be rendered meaningless.

The Court's conclusion that the June 18, 2007 email exchange was administrative in nature is dispositive of Plaintiff's claim.  The Court nevertheless notes that a second basis for dismissing Plaintiff's claim exists.  Plaintiff has *not* disputed (either before the BCNR, in his Complaint, or in his Opposition to Defendant's Motion to Dismiss) that his request for an SSB was untimely and that the BCNR could properly deny his request on that basis.  *See* Def.'s Mot., Ex. E at 4 (4/27/07 Advisory Opinion) ("[Plaintiff] admits that [] the SSB . . . three-year time

limits apply to his case"); Pl.'s Opp'n at 6-15 (arguing only that the BCNR considered ex parte

communications and failed to adequately address one of Plaintiff's arguments supporting his

request for an SSB).  Plaintiff has instead asserted, with this claim, that the ex parte

communication influenced the BCNR's decision as to whether it should waive the three-year

time limit applied to SSB requests.  Plaintiff fails to identify any reason why the BCNR would be

required to waive the three-year time limit, and in fact, Defendant argues that the decision not to

waive the time limit is committed to the discretion of the BCNR and not subject to review.  *See*

Def.'s Mot. at 18 & n.6.  Plaintiff failed to respond to Defendant's argument in his Opposition.

Although the Court declines to reach the merits of Defendant's argument without a full briefing

of the issue, Plaintiff's failure to respond acts as a concession in this case that the BCNR's

decision not to waive the three-year time limit is unreviewable.  *See, e.g.*, *Miller v. Rosenker*, 578

F. Supp. 2d 107, 111-12 (D.D.C. 2008) ("Plaintiff failed to respond to . . . six arguments that

Defendant made in his Motion to Dismiss . . . [and] [a]s a consequence, Plaintiff is deemed to

have conceded all six of those arguments"); *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58

(D.D.C. 2003), *aff'd* 389 F.3d 1291 (2004).

 Based on the foregoing, the Court finds that the June 18, 2007 email exchange did not

violate 10 U.S.C. § 1556 as an ex parte communication.  Accordingly, the Court shall grant

Defendant's Motion to Dismiss this claim in Count III.

  2. June 9, 2003 Administrative Message

 Plaintiff next alleges that the BCNR considered an ex parte communication when it relied

on the Secretary's June 9, 2003 Administrative Message that amended Instruction 1401.1B to

include a three-year time limit for SSB requests.  *See* Compl. ¶ 19 ("[p]rior to the decision of the

BCNR, [P]laintiff was neither provided a copy nor given notice of the message dated June 9, 2003").  The parties agree that this "Administrative Message" was sent by the Secretary to the entire Navy and Marine Corps, and that it was published on a website accessible by the general public.  *See* Pl.'s Opp'n, Ex. 1 at 1 (June 9, 2003 Administrative Message); Def.'s Mot. at 19-20; Pl.'s Opp'n at 10.  Defendant moves to dismiss Plaintiff's claim on the basis that it was not an "ex parte communication" as contemplated by 10 U.S.C. § 1556, "just as statutes and regulations do not constitute ex parte communications to those who interpret and apply them."  Def.'s Mot. at 19-20.  Defendant also argues, in the alternative, that the message, even if it were considered to be an ex parte communication, would fall within the "administrative" exception described above.  *Id.* at 20.

In response, Plaintiff argues that he had no "actual knowledge of the content" of the Administrative Message, and that it was difficult to locate on the public website.  *See* Pl.'s Opp'n at 10-11.  Plaintiff further argues that the message is not equivalent to a statute or regulation, citing a 1952 decision by the Court of Federal Claims that distinguished such an amendment from a contract, regulation, or statute.  *Id.* at 11 (citing *Olson v. United States*, 123 Ct. Cl. 141, 149 (Ct. Cl. 1952)).  Finally, Plaintiff argues that the message should not be considered "administrative in nature" because it affected Plaintiff's "substantive legal rights."  Pl.'s Opp'n at 12.[5]

Plaintiff is correct that the Administrative Message could be considered an ex parte communication based on the plain language of the statute.  Although the June 9, 2003

---

[5] Plaintiff does not argue that the Secretary's use of an Administrative Message to amend Instruction 1401.1B was procedurally improper.

Administrative Message was sent by the Secretary in 2003 and the BCNR did not consider

Plaintiff's request until more than three years later, the statute does not place a time frame on

when an ex parte communication must occur.  *See* 10 U.S.C. § 1556(a) (referring to "all

correspondence and communications").  Similarly, although the Secretary sent his Administrative

Message to the entire Navy and Marine Corps and not specifically to a member of the BCNR, the

statute does not require that a prohibited communication be sent specifically to or from a member

of the BCNR.  *Id.* (indicating that a communication need only be sent to or from "the agency or

board").  And, although the statute provides that ex parte communications are not prohibited

when they are made available to the applicant, *id.* § 1556(b), Plaintiff specifically alleges in his

Complaint that he "was neither provided a copy nor given notice" of the Administrative

Message.  Compl. ¶ 19.

Ultimately, the question of whether the Secretary's Administrative Message is fairly

characterized as an ex parte communication is irrelevant because, even if it could be so

characterized, it would clearly constitute a communication that was "administrative in nature."

10 U.S.C. § 1556(b).  The Secretary sent the "Administrative Message" to the entire Navy and

Marine Corps, and posted it on a website.  The message described the amendment to Instruction

1401.1B, adding a three-year time limit for SSB requests.  It is difficult to imagine a more

administrative communication on which the BCNR could rely.  The message included only

factual information (*i.e.*, that the applicable regulation was amended), and the information is not

in dispute between the parties (*i.e.*, the amendment did, in fact, occur).  Regardless of whether

the amendment was easily accessible on the internet or not, Plaintiff fails to explain how notice

of the amendment would have allowed him to add anything to the BCNR's decision that his

application was untimely, or that a waiver of the three-year time limit was inappropriate.[6]

Because the Secretary's June 9, 2003 Administrative Message fell within the administrative exception set forth in 10 U.S.C. § 1556(b), the Court shall grant Defendant's Motion to Dismiss this claim in Count III.

> B.     *Count IV: Failure to Address Argument*

Count IV of Plaintiff's Complaint alleges that the BCNR's decision was (1) arbitrary and capricious, (2) not based on substantial evidence, (3) a result of material error of fact or material administrative error, and (4) otherwise contrary to the law because "it failed to acknowledge and comment on plaintiff's argument that he must be allowed a reasonable time to seek an SSB before a newly created statute of limitations bars redress after the cause of action has accrued." Compl. ¶ 31.  Because the "BCNR failed to examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts founds and the choice made . . . [and] entirely failed to consider important aspects of the case presented to it by the plaintiff, the BCNR issued a decision that was [in violation of 10 U.S.C. § 628(g)(1)]."  *Id.*

The Court of Appeals for the District of Columbia Circuit explained in *Frizelle v. Slater* that the BCNR need not present an analysis that is a "'model of analytic precision to survive a challenge.'"  111 F.3d 172, 176 (D.C. Cir. 1997) (quoting *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)).  Instead, a court shall uphold a decision of "'less than ideal

---

[6] Despite Plaintiff's repeated assertions that he lacked knowledge of the Secretary's Administrative Message, Congress' 2001 amendments to 10 U.S.C. § 628 specifically authorized the Secretary to prescribe time limits for SSB requests and noted Congress' intent that its amendments would have both retroactive and prospective effect.

clarity'" if the BCMR's "'path may reasonably be discerned.'" *Id.*   The BCNR may also explain

its decision by referencing other materials in its decision.  *See, e.g.*, *Envtl. Defense Fund, Inc. v.*

*EPA*, 465 F.2d 528, 537 (D.C. Cir. 1972) (permitting an agency to articulate the basis for its

decision by reference to relevant sources).

Defendant argues that the BCNR met its burden by relying, in part, on the Advisory

Opinion as to which it "substantially concurred."  *See* Def.'s Mot. at 21.  Among the facts and

conclusions set forth in the Advisory Opinion are the following:

- The time limit in effect when [Plaintiff] filed his BCNR petition was, and is, three years.

- [Plaintiff] argues that [the three-year time limit] should be waived because he had no notice.

- [T]he Navy cannot, and should not, grant SSBs in perpetuity.

- Petitioner's request comes 10 years after he initially failed [to be selected] for promotion.

- Petitioner's request should be denied because his submission is untimely.

Def.'s Mot., Ex. E at 4-5 (4/27/07 Advisory Opinion).  The BCNR added the following fact in its

decision:

- [Instruction] 1401.B, predecessor of [Instruction] 1420.1B as it relates to SSB's, was amended by message of 9 June 2003 to include the three-year time limit for SSB applications.

*Id.*, Ex. F at 3 (11/14/07 BCNR Decision).  Because there is no requirement that the BCNR ever

waive the three-year time limit, Defendant argues that these facts sufficiently explain why

Plaintiff's request for an SSB was denied.  *Id.* at 22.

Plaintiff argues, in response, that "a careful inspection of the OJAG advisory opinion and

the decision of the BCNR demonstrates that neither acknowledged nor addressed Plaintiff's

argument that he was entitled to a reasonable period of time in which to request a[n] SSB after

the newly enacted three-year time limit was imposed." Pl.'s Opp'n at 14. According to Plaintiff,

because the BCNR failed to respond to an argument that "do[es] not appear frivolous on [its]

face and which could affect the Board's ultimate disposition," the Court should remand to the

BCNR for further explanation. *Id.* at 15.

   The Court finds that the BCNR adequately addressed Plaintiff's argument. The brief that

Plaintiff submitted to the BCNR argued that "[m]ost courts have ruled that a reasonable period of

time is the limitation period created by the bar, in this case, three years." *See* Pl.'s Opp'n, Ex. 2

at 8 (1/31/07 Brief). Plaintiff's brief then proceeds to argue that his request for an SSB should be

deemed timely because Instruction 1420.1B was implemented on March 28, 2006 – ignoring the

amendment on June 9, 2003, which initially imposed the three-year time limit. *Id.*

   As set forth above, the BCNR's decision explained that a three-year time limit applied to

Plaintiff's request and that it was implemented on June 9, 2003, *not* on March 28, 2006, as

Plaintiff's argument suggested. *See* Def.'s Mot., Ex. F at 3 (11/14/07 BCNR Decision)

("[Instruction] 1401.B, predecessor of [Instruction] 1420.1B as it relates to SSB's, was amended

by message of June 9 2003 to include the three-year time limit for SSB applications"). Even

assuming that Plaintiff was legally entitled to a three-year period after implementation of the time

limit (as he argued in his brief), his request for an SSB would still have been untimely – just as

the Advisory Opinion stated and the BCNR concluded:

> the Navy cannot, and should not, grant SSBs in perpetuity. Petitioner's request
> comes 10 years after he initially failed [to be selected] for promotion. The time
> limit in effect when he filed his BCNR petition was, and is, three years . . .

17

Petitioner's request should be denied because his submission was untimely.

*Id.*, Ex. E (4/27/07 Advisory Opinion).  The Court finds that the foregoing sufficiently explains

the BCMR's holding and indicates why Plaintiff's argument was rejected.  The Court also finds,

on this record, no further explanation is or was necessary.[7]

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT Defendant's [4] Motion to

Dismiss.  This case shall be dismissed in its entirety.  An appropriate Order accompanies this

Memorandum Opinion.


Date: March 5, 2009

                                            _/s/_____
                                            **COLLEEN KOLLAR-KOTELLY**
                                            United States District Judge

---

[7] Given that the BCNR's decision was sufficient to meet its burden of explaining its reasoning, the Court expresses no view as to Defendant's arguments concerning what period of time, if any, should be considered reasonable under applicable case law.